Let's turn now to our final argued case this morning. Number 19-6036, United States v. Moses. Mr. Lee? Yes, your honor. This is Josh Lee from Mr. Moses. The question in this case is whether Mr. Moses is entitled to an evidentiary hearing on the issue of whether the police violated Franks v. Delaware. And the court should answer that question yes, not because Mr. Moses has proven a violation of Franks, but because he's at least raised enough doubt about the truthfulness of the warrant affidavit in this case to justify being heard on the matter. So specifically, he's made an adequate preliminary showing that when the police applied for a warrant to search his property, they dishonestly failed to disclose the existence of surveillance footage that a magistrate reasonably could have found negated probable cause for the police's theory that Mr. Moses was operating a chop shop from his property. So had this surveillance information been disclosed, it would have permitted two reasonable inferences that a magistrate could have determined defeated probable cause. The first of these is that the surveillance would have captured some indication that there was a chop shop if one existed. That's because the camera was set up to capture a wide swath of Mr. Moses' property, including his driveway, his home, and two outbuildings, including the place that was alleged to be the shop that he worked on the cars. It was up and running for five months, and the very reason that the police installed the surveillance camera was to get evidence to support their theory that he was running a chop shop. The second inference that a magistrate could have drawn to defeat probable cause is that the surveillance camera didn't capture any indication over five months that Mr. Moses was operating a chop shop. And that's not only because the officer who reviewed the surveillance said that he never saw a vehicle on Mr. Moses' property that had been reported stolen, according to the defense's affidavit, but also because if there had been any indication on chop shop, we can infer that the police would have included those facts in the warrant affidavit in support of probable cause. So, that is why... Counsel? Yes. I spot you that, but we have also aerial surveillance was part of the submission. There were five informants that linked potential activity to this property. Isn't that more than enough to establish probable cause in this particular circumstance? So, let me make clear that on its face, we can see that the affidavit supplied probable cause. So, certainly, there's no question that the informant's statement, at least, on their own would have established probable cause. Our claim is that when you include this surveillance information, that a magistrate reasonably could have determined that that trumped the informant's statement because the surveillance information is objective. The camera doesn't lie. In addition, I think that a reasonable magistrate could have discounted the informant's statement as possibly the product of police suggestion, even if inadvertent. Counsel, how do you overcome the materiality component for entitlement to the Frank hearing? So, the materiality component is whether a I think that the magistrate could have drawn inferences to negate probable cause because in light of the surveillance video, which contradicted the informant, the magistrate could have looked at these informant's statements and said, look, these are very low-quality statements. For the most part, the affidavit doesn't give us any reason to think that the informants are reliable reporters. For the most part, it doesn't show any source of knowledge, and it makes clear that these informants who made the statement are facing their own criminal charges and probably trying to save themselves. And so, in light of the surveillance information, it's entirely reasonable to think that what happened is this. The police are busting a bunch of people for stealing cars or possessing drugs or whatever, and during the interviews, let slip, maybe inadvertently, that the police's theory is that and trading them for drugs. And some of these folks who need law enforcement's favor to stay out of jail are willing to say, you know what? You're right. Everybody is taking their stolen cars to barrels and trading them for drugs. And that's how you get this affidavit. And while standing alone, that might not be something that a magistrate would do with these statements. That's something that you have to take seriously when you have this surveillance video that seems to contradict what the informants are saying. Thank you, Judge Briscoe. Well, I'm really on the same point that Judge Tinkovich is on. I think that the way you're styling the burden for a Franks hearing is a little different than the way it is written. I think the requirement is that but for, it's a but for question, the warrant would not have issued. That's the showing that has to be made. And here you have, and here, as we've all said already, you have the informants, you have the aerial photos, you also have the background investigation by Officer Barber. So don't you have to establish that for the information, the warrant would not have issued? I think that I do have to establish the materiality is but for the omission that a magistrate could have determined that the affidavit didn't show probable cause and should not issue. I think that's right. And I think that the evidence offered by the defense at least makes a preliminary showing of that. I've already talked about the informant. And the problem is that those are well, I think the only counsel, I think the only thing that you've that you're really arguing is that you think there might be something on that footage that is exculpatory. But you do not know that. And I think that's bad. So I don't think I don't think we have the standard in Frank's scenario where the law enforcement must provide to the magistrate all the dead ends perhaps in their investigations. We didn't find any fingerprints, we didn't find any bleeding bodies or bloody knives. These are the things we didn't find, but these are the things we did find. I mean, there's no requirement like that. There isn't a requirement like that. And Mr. Moses made a preliminary showing that this surveillance video was exculpatory. And I think that your point that we don't definitively how was it exculpatory? Because they the police said that we had this camera up and running for five months. It recorded a wide swath of Mr. Moses's property, and that they never saw a vehicle on his property that had been reported stolen vehicles, but they could not from from the fact that it's dark and the pictures were at a long, long distance, they could not discern make or model of the vehicles. I don't think that there is any admissible information to that effect. That is that what the what the where affidavit, the only individual that actually looked at this footage? Is that what he testified to his affidavit? No, it is not. There is no where affidavit in the record. There's a defense affidavit and all the defense affidavit says that he never saw a vehicle on Mr. Moses's property that had been reported stolen. Now, the prosecutor said in a pleading in response to Mr. Moses's request for a hearing that that was what happened with the surveillance video. But that can't be considered in determining whether Mr. Moses should get a hearing. If the government wants to present extrinsic evidence to support and a warrant affidavit to explain apparent omission, then it has to do that at a frontier. And this is the three seven certain cases that I cited to that effect. And that. I have no further questions. Judge Judge Madison. Counsel, you just referenced, and I think this was referenced earlier, too, that Detective Ware said he didn't see a vehicle in the footage that had been reported to be stolen. But how is that inconsistent with the presence of vehicles that may have been stolen? Well, I think that the record fairly supports that Detective Barber and Detective Ware were doing like a sort of comprehensive investigation into stolen cars in in Norman, Oklahoma. And so they had a list of all the cars in Norman that had been reported stolen. And if they have this camera up and running for five months and no, none of the cars in the Norman area that had been reported stolen, that definitively contradicts the informant statement that all of the stolen cars in the Norman area are being brought to Mr. Moses's property. So so that's why I think also there's been a couple of questions raised about the aerial photographs. I don't think that those are inculpatory or corroborate the informant statement at all. And the reason is Mr. Moses doesn't deny that he worked on cars, that he had a salvage operation and or an informal repair business on his property. And what the aerial photographs show are vehicles that are dinosaurs, like from the 1970s and not the sort of thing that also noteworthy that if you look at the photographs closely, it's clear that these vehicles had clearly been there for some time. So there are grass and weeds that are growing up around them. And that contradicts the affidavits assertion that all the vehicles that are being taken to the property are being dismantled within 24 hours. So it's sort of self contradictory. Counsel, that takes us back, I think, to the to the five informants. You say in your brief, page 37, that Detective Barber possibly suborned or fabricated the informant statement. Isn't that a little strong? It might be. I thought about this. I thought about this as I was preparing this. I think what I also argue in my brief and I think is much more likely is that this is accidental, that the police are conducting these interviews. And let's flip that look, you know, we we understand that all of these cars are being taken out east to Daryl. What do you know about that? And that the informant say, you know, you're right. Everyone is taking their stolen cars out east to Daryl and trading them for drugs because they're under the threat of their own criminal charges and need to save themselves. So I think that the much more likely scenario is that this is accidental and that it's, you know, sort of inadvertent suggestion and that the informants are telling the police what they want to hear. And to me, there's some support for that in that a lot of these statements are very vague. They just say that, you know, Kayla Barczak says all the stolen cars are going out east to this address. There's not very much concrete there, which suggests that the informants may be just saying what the police want to hear. And, you know, the reason that you have to consider this is that there is a reasonable inference, which we're entitled to at this pre-hearing stage, that this video surveillance footage is just totally inconsistent with what the informants are saying. And to Judge Briscoe's point that we don't know definitively what this surveillance footage shows, that's why we need to have a hearing and put the officer who reviewed this footage under oath and question him about it. And if there are no further questions, I'll reserve the remainder of my time. Thank you. Let's hear from the government. Mr. Krieger. Thank you, Your Honor, and may it please the Court, Stephen Krieger on behalf of the United States. The District Court properly denied Mr. Moses' motion to suppress without conducting a frank hearing. And admittedly, much of what I'm going to say has been discussed and emphasized by the Court already, but I think some of it bears repeating. The fundamental dispute in this case is whether the Court, when deciding whether to hold a frank hearing, must draw all inferences against finding probable cause. Much of what Mr. Lee has argued is the Court could infer this thing that would negate probable cause. The Court could infer this thing that could allow it to infer this thing that would defeat probable cause. While Mr. Lee argues that this Court must do that, Franks rejects that position. To begin with, Franks explains that the hearing that it was requiring is a veracity hearing. It's not a hearing to determine whether there's probable cause. It's not a hearing to determine whether there's additional evidence or for a fishing expedition or anything like that. The purpose of the hearing was to determine whether the assignment acted intentionally or with a reckless disregard for the truth when they included false information in the affidavit or, in this case, limited information. Just an aside from that, one of Mr. Lee's arguments is that much of what he's arguing with regards to the informants and how they somehow are mistaken was accidental. Assuming, just for a moment, that he's correct that it's accidental, that doesn't warrant any relief under Franks. Franks, for negligence, for accidents, those false statements or omissions would not need to be corrected. It's only omissions or false statements that are intentionally made or made with a reckless disregard for the truth. But getting back to the purpose of the Franks hearing, and I think this also goes, this purpose was also further discussed by Judge Risco, Franks confirmed the understanding that the purpose of the hearing was only a veracity hearing because the court explained that a hearing is not required unless, quote, there remains sufficient content in the, excuse me, it's not required if, quote, there remains sufficient content in the warrant affidavit to support a finding of probable cause once the affidavit is corrected. This sufficient standard is not a standard that would suggest drawing all inferences against finding probable cause. It's a standard that asks on its face, with information included, would it have, would there be a finding of probable cause? Now, the court doesn't have to go so far as to say that all inferences should be drawn in might suggest that. This court only needs to defer to inferences that the, it would only need to defer to inferences given by the district court. Counsel? Yes, Your Honor. This is Judge Simkevich. You know, it does seem the camera would have captured some evidence of a illicit shop over a five-month period of time. It just seems logical that if cars are being run through there, the camera would have picked it up. And the fact that it didn't pick up anything seems to undercut the inference that there was an operation there, notwithstanding the informant statements. And Your Honor, I would submit that perhaps if there was only one informant, if we were right on the edge of probable cause, that that might warrant it, at least for a discretionary Frank's hearing. But the question... Was the district court, was it permissible for the district court to speculate that the cameras didn't show activity because the cars were being run through there at night? Well, Your Honor, there are two places in the affidavit that would support that inference that the district court drawn. First, the district court or the affidavit pointed out after months and months of investigation that the cars were being stolen at night in one of the concluding paragraphs of the affidavit. And that was further supported. Second, it was also supported by the fact that when some of these thieves were... Excuse me. And when calls were being made, they were wearing black clothing, suggesting if they were trying to move surreptitiously, they would be moving in the evening hours when it was dark. And so based on those two things, yes, I would submit that the district court would be able to draw the inference. Thank you. Judge Wisco? Just one question. Is there any evidence that has been revealed in either briefing or at the trial of any falsity by Barber or reckless disregard? I mean, are we really just discussing here an omission of what we think could have been on this footage that was erased? Yes, Your Honor. There was no trial and there was no hearing in this case. And so everything was in the paper and everything was in the motion and response. Essentially, everybody has operated on the presumption and I would assume, and based on this court's case law, I think it's a relevant presumption, is that if a defendant can show that evidence that was omitted was material, then for purposes of determining whether or not to hold a hearing, the court will draw the inference that the material omission was reckless, done with reckless disregard for the truth, or intentionally, which this goes back to the entire purpose of holding a hearing. And just one final question. We, in this case, as I understood it, Barber never viewed the footage. Is that correct? Correct. He relied fully on Detective Ware's review of the footage. Okay. Thank you. Judge Matson? Counsel, what is your support for the assertion that the defense investigator, Mr. Rain, omitted from his affidavit portions of his interview with Detective Ware, including that the video footage showed cars driving onto the property at night? Well, Your Honor, in Mr. Rain's affidavit, he explained that he was not the only one who was present for his interview with Detective Ware. He also said the defense counsel and the same attorney who he said was present on behalf of the government of that interview was the attorney who wrote the response brief. And that information is contained, I believe, in the second page of that response brief. And it isn't in the record, is it? It's just in the brief? The response brief filed, though it's part of the record on appeal, but it was not supported by an evidentiary. It essentially would be a proffer that was included in the response brief. Thank you. Unless the court has any further questions, I'm happy to yield back the remainder of my time. All right, counsel. Thank you. Judge Briscoe, did you have any follow-up? Nothing further. Thank you. Okay. Thank you, Mr. Krager. I think Mr. Lee had some rebuttal time. You may proceed. Thank you, Your Honor. Opposing counsel said that Franks only contemplates a hearing on the question of reckless disregard of the truth. I don't think that that's accurate. As far as I can see, Franks doesn't say that at all. And it just makes sense that if there is a fact about what it is that the police knew at the time that they drafted the warrant affidavit, and here the dispute of fact is what the surveillance footage showed, that we need to have an evidentiary hearing to clear that up if the defense has made a preliminary showing that the surveillance footage was material. And I think that we have made that showing. The other point I wanted to make is what is the evidence that Detective Barber acted with reckless disregard for the truth? And it's not just that the surveillance footage was exculpatory, but it's also that this is a... Go ahead and finish your thought. Yeah. This is a 14-page affidavit that details every single step of the investigation in this case. And then I think based on the extreme detail of the affidavit, a judge could infer that the reason this particular aspect of the investigation was left out is because it might suggest that Mr. Moses wasn't in fact operating a chop shop. Counsel, we appreciate both your arguments this morning. The case is submitted and counsel will be excused.